Mr. Reichman, I understand you're on the phone, and we're ready to hear from you now. I am on the phone, and I'm going to speak, but I'm not going to take the full ten minutes. I'll save some for rebuttal. Basically, it's a very simple matter to determine. Our argument basically is that Article II, Section 15C, the California Constitution, is unconstitutional, and it provides for a plurality of voters to select the new governor. Polarity is insufficient. If you were to reverse the results of the election, 62% voted to keep the governor and 38% wanted him removed. If you were to reverse it, still, the number of votes that the person that won the second question would have been less than the number of votes that the governor would have received. So basically, the first argument and the best argument is that plurality of voters is just insufficient to select the governor. And this is compounded basically by the argument of Mr. Clark that he only had one vote and the opposition had two votes. I don't think I made it or it's made sufficiently clear in the brief, but look at how it happened. Seventy-five days were allowed between the time the election was announced and the voting took place. Seventy-five days, and those had the option of answering the second question or didn't answer the second question as to who would replace the governor. Only 7.4 million voted on the second question. Forty percent of the people that voted on the first question did not vote on the second question, and the answer is very simple. They had no one that they wished for whom to vote. You have to look at it and how it happened. Seventy-five days in which Mr. Clark has to review the qualifications of 46 candidates to see which one is less disagreeable to him, not to re-vote for anybody. So it is putting the two together. I don't think that the election ballot is fair to have two issues on the same ballot. I would have one issue on one ballot. If the government is voted to be removed, start a new election, not just say, all right, we're going to go and take the plurality of the other candidates. So that basically is my argument. Can I ask you, you've interjected Proposition 14 into the case, right? But I'm just not sure how that, your argument as to Proposition 14 frames a federal issue. Can you explain that? No, I'm not sure that it does either. I think the issue is just simply whether or not a plurality vote to elect a governor, I don't know, it's not a real election, it's a recusal. Wait, what provision of the federal constitution do you cite for the proposition that a state cannot allow an official to be elected by a plurality of voters? It's the 14th Amendment, the due process clause. Wasn't President Clinton elected by a plurality? I don't know. When there are three candidates running for president, as sometimes happens, the President of the United States is elected by a plurality. Is that unconstitutional? No, I don't think it's unconstitutional. But when you've got 46 disagreeable candidates, at least disagreeable to Mr. Clark, that's a different situation. Okay. All right, do you want to save the remainder of your time for rebuttal? Yes, I do. Thank you. Very good. All right, let's hear from the state. Good morning. Please proceed. Good morning. May it please the Court. John Echevarria for Secretary of State Weber. This court should affirm the district court's dismissal of plaintiff's first amended complaint without leave to amend. Here plaintiffs are challenging a reasonable, non-discriminatory, politically neutral restriction on the eligibility of a single person, an incumbent, from being a replacement candidate in a recall election. Contrary to plaintiffs' repeated claims in the district court in the opening briefing and again here today, plaintiff had an opportunity to vote twice. He had an opportunity to vote on question number one, like all California voters in the recall election, and the plaintiff also had an opportunity to vote on question number two, as to who should replace the governor in the event that the recall was approved by a majority of voters. If I could rephrase your opponent's position, he may not agree with it. It seems to me his real complaint is that he didn't have an opportunity. He wouldn't have had an opportunity in election two, had election two mattered, to vote for Governor Newsom. Could you address that? So he would not have had an opportunity to vote for Governor Newsom as a replacement candidate, that is correct, in the event that, but he had an opportunity to vote on question number two. No, I understand. I understand I'm rephrasing his argument a little bit, but his argument seems to be I had a constitutional right in the second election to vote for the candidate of my choice, and I was barred by California law from doing so because Governor Newsom was disqualified. Could you address that? So he does not have a right to vote for any candidate of his choice. Could he have written in Governor Newsom? He could not have. Because he was ineligible. Correct. So I guess my question is, does that violate the federal constitution? It does not. California is free to impose reasonable, non-discriminatory restrictions on candidate eligibility. For example, term limits. Under California law, certain state lawmakers are prohibited from running for re-election if they've served the requisite number of terms, and that would effectively impair the ability of a Californian to vote for that person, for that incumbent, in a future election. But courts have upheld term limits as constitutional. They don't impose a severe burden on the right to vote. They don't violate the principle of one person, one vote under the United States Constitution, and they're justified by important government interests. And here, the restriction also imposes a very minimal burden on the right to vote because the plaintiff could have voted for any of the other replacement candidates. I appreciate that he didn't like any of the other replacement candidates, and many voters who voted on question number two also did not feel compelled to cast a vote on question number two, but that does not raise a constitutional concern here because California has an interest in ensuring that the right to recall is effective. If a majority of individuals, or even a supermajority, approve of the recall of an official on question number one, if the incumbent can appear as a candidate on the same ballot on question number two, then there's this potential for an anomalous result that the district court observed and credited in which the incumbent could be immediately returned to office in the very same election that would undermine the integrity of a recall election, it would defeat the purpose of the recall, and it would thwart the will of a majority of voters if question number one is approved. And it appears in this case plaintiff is shifting once again to a different theory where they're claiming that there is a constitutional violation if a mere plurality elect the individual who's going to serve the remainder of the term, but plaintiff cites to no case in which the court has held that plurality votes are unconstitutional. Moreover, even if that's true, that there is a requirement that a majority of voters elect a replacement candidate, that wouldn't remedy the injury the plaintiff is complaining of. Plaintiff is complaining that he was unable to vote for Governor Newsom. So even if a majority were required on question number two, Governor Newsom- That's why I rephrased the question, and I think you answered it. I've got a separate question. Take it you're not contending this case is moot because the elections are over. Significant portions of the case are moot. This is capable of repetition, is it not? It is capable of repetition. There are frequent attempts to recall governors. This was the 50- Or other officials. Or other officials for that matter. That's exactly right. So this type of election is capable of repetition, but I think there are serious questions about whether plaintiff's injury in being unable to vote for a particular candidate on question number two would be repeated. It's unclear what kind of a recall election would happen in the future, whether the plaintiff may actually like a candidate on question number two to serve as a replacement. I'm going to ask Mr. Reichman the same question, but why would one vote to recall the incumbent and then vote to elect, so to speak, the incumbent? What political strategy would be behind that? Sorry, Governor. If someone wanted to vote yes on question number one- Yeah. And then also voted for a replacement candidate? For the incumbent. Oh, for the incumbent? Yeah. I don't know. I don't know how that would make sense. Well, in effect, isn't that what we have here? Isn't that what Mr. Reichman is dealing with? So Mr. Reichman is representing a plaintiff who wanted to vote no on question number one. So the plaintiff opposed the recall, but he wanted to vote for Governor Newsom on question number two. But as a matter of law, if the recall is not effective, the incumbent stays in office. That is correct. In order for any of the replacement candidates to be elected to serve the remainder of the term, question number one has to be approved by a majority of votes. And that's another reason why this law imposes or this constitutional provision imposes a minimal burden, because for any of the replacement candidates to be elected, there's that first threshold hurdle that all of them have to negotiate and overcome. Yeah, I mean, listen, I get the theory. The theory is that the yes vote on the first question could be 51-49. Those same 49 percent would vote for Governor Newsom if they had the opportunity. Maybe none of the other 16 or 17 candidates could get more than 10 percent, and so you'd have Governor Newsom with 49 percent, everyone else gets, you know, 5, 10 percent. And, you know, that's his argument that, boy, shouldn't Governor Newsom be restored to office in that scenario, even though maybe he has less than a full majority of the vote? What is your understanding of the plaintiff's Proposition 14-related claim? Because I couldn't figure out how the district court disposed of that portion of the case. So the district court did not do an in-depth analysis of the Proposition 14 arguments. Our position was that this is a state law matter that is not appropriately resolved in this court. Well, it could be under supplemental jurisdiction, I suppose, theoretically. The question is, did the judge refrain from addressing it because of who the judge was in this case? Judge Fitzgerald? Judge Fitzgerald, because he exercised his discretion under 1363C not to address it, or did he? There is no state law claim pleaded there to 1983 counsel. Yeah, I know. It's a 1983 claim, and now there's a Proposition 14 argument being made. I'm trying to figure out whether that's a state law claim that the district court didn't address or whether it's just an argument. So tell me how you think the district court disposed of it. We were puzzled by it as well, Your Honor. But the district court did not, you know, do an in-depth analysis of the issue, but it did note the Proposition 14 argument. But even if the district court didn't squarely address and reject the Prop 14 argument, we've provided in our answering brief a thorough explication of what our views are. There is no violation of Proposition 14. I understand you did precisely what you were supposed to do. I'm trying to figure out what the plaintiff in this case now retains. If there's a judgment against him that encompasses his Prop 14 argument, he can't make it again. If, on the other hand, the judge just declined to address it for some reason, I guess he can go raise it somewhere else. What's your view on this? Perhaps in state court? Yes. So the district court's opinion did not, you know, do an in-depth analysis, but it does appear that the court was framed. So certainly there's no issue preclusion on that claim. It doesn't. No, because, yeah, exactly. It doesn't appear that the court, you know, actually addressed and resolved that particular state law claim. So I wouldn't want to, you know, make a representation here that, you know, that claim would be forever barred if the court ultimately affirms in this case. Okay. All right. If this court has any further questions, we ask to affirm and we'll submit. Great. Thank you very much. Thank you so much, Your Honors. Appreciate it. All right. Mr. Reichman, you have plenty of time for rebuttal, and we're happy to hear from you right now. Well, I have nothing more to say. I'll be happy to try to answer any questions you may have. I don't think we have any additional questions for you. So with that, I will say this case is submitted, and we are adjourned for the day. Thank you very much. Thank you. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart. For this session, now stands adjourned. Thank you.
judges: O'SCANNLAIN, WATFORD, HURWITZ